# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, Plaintiff, v. HYPHAMETRICS, INC., Defendant. | Civil Action No. 23-136-GBW |
| THE NIELSEN COMPANY (US), LLC, Plaintiff, v. HYPHAMETRICS, INC., Defendant. | Civil Action No. 23-532-GBW |

David E. Moore, Bindu A. Palapura, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul H. Berghoff, James L. Lovsin, Mateusz J. Kulesza, Alexandra E. Criner, Christopher M. Scurry, Jerry Lu, Christian Karpinski, MCDONNELL BOEHNEN HULBERT & BERGHOFF LLP, Chicago, IL; Steven Yovits, Constantine Koutsoubas, Douglas Lewis, Jason P. Greenhut, KELLY DRYE & WRREN LLP, Chicago, IL.

   *Counsel for Plaintiff*

John G. Day, Andrew C. Mayo, ASHBY & GEDDES, Wilmington, DE; Edward A. Pennington, Beth Oliak, PENNINGTON OLIAK PLLC, Washington, DC.

   *Counsel for Defendant*

## MEMORANDUM OPINION

July 23, 2025
Wilmington, Delaware

                                                                                   _____
                                                                                   GREGORY B. WILLIAMS
                                                                                   UNITED STATES DISTRICT JUDGE

Pending before the Court is Plaintiff's *Daubert* Motion to Exclude the Expert Reports and Related Testimony of Philip Wilkinson ("Motion" or "*Daubert* Motion") (D.I. 155), which has been fully briefed (D.I. 156; D.I. 165; D.I. 181).[1] For the following reasons, the Court denies Plaintiff's *Daubert* Motion (D.I. 155). Defendant's Request for Oral Argument (D.I. 193) is denied-as-moot.

I. **BACKGROUND**

This patent-infringement action concerns U.S. Patent No. 10,970,588 ("the '588 Patent"). D.I. 1. Nielsen later asserted two other patents against Hyphametrics—U.S. Patent No. 11,652,901 ("the '901 Patent") and U.S. Patent No. 11,893,782 ("the '782 Patent")—and all three patents are at issue in this action (together, the "Asserted Patents"). D.I. 22 (consolidating 23-cv00136-GBW-CJB and 23-cv-00532-GBW-CJB); D.I. 81.[2]

On November 26, 2024, Nielsen served expert reports for the issues on which it bears the burden of proof: infringement and damages. D.I. 137. Nielsen's damages expert, Mr. Arst, assesses reasonable royalty damages for Hyphametrics infringement of the Asserted Patents. D.I. 156-1, Ex. 1 ("Arst Report"). Two of Nielsen's technical experts, Dr. Moulin and Dr. Martin, provide opinions on infringement of the Asserted Patents. D.I. 156-1, Ex. 2 ("Moulin Report"); D.I. 156-1, Ex. 3 ("Martin Report"). Dr. Moulin provides his opinions on Hyphametrics' infringement of the '588 Patent and the '782 Patent and alternatives to the '588 and '782 Patents

---

[1] The Plaintiff is Nielsen Company (US), LLC ("Nielsen" or "Plaintiff"). The Defendant is Hyphametrics, Inc. ("Hyphametrics," "Hypha," or "Defendant").

[2] Unless otherwise noted, D.I. cites are to documents in the lead case, 23-cv-00136-GWB-CJB.

(Moulin Report ¶1), and Dr. Martin provides his opinions on Hyphametrics' infringement of the '901 Patent (Martin. ¶1). Neither Dr. Moulin nor Dr. Martin offers opinions regarding Hyphametrics' offers to sell and sales. *See* Moulin Report ¶¶52-54; Martin Report ¶¶56-57. Another of Nielsen's technical expert, Dr. Almeroth, provides opinions on Nielsen practicing the '901 Patent and alternatives to the '901 Patent. D.I. 156-1, Ex. 4 ("Almeroth Report").

On December 24, 2024, Hyphametrics served the rebuttal expert report of Philip Wilkinson (D.I. 156-1, Ex. 5 ("Wilkinson Report")) and later served the supplemental expert report of Philip Wilkinson (D.I. 156-1, Ex. 6 ("Wilkinson Suppl. Report")). The Wilkinson Report purports to respond to all of Nielsen's opening expert reports, i.e., it addresses infringement of all three Asserted Patents and addresses damages. Wilkinson Report ¶¶17-64.

Mr. Wilkinson was deposed on January 31, 2025. D.I. 156-1, Ex. 7 ("Wilkinson Dep. Tr."). Mr. Wilkinson is a consultant (*Id.* 83:1-9) and testified that "most of his consulting work comes from solving technical and business issues, not patent issues" (*Id.* 83:17-19). Mr. Wilkinson has a Bachelor of Science in Mechanical Engineering and completed one semester of coursework towards a Master's Degree in Mechanical Engineering. *Id.* 55:8-10, 59:12-17. He has never worked in the audience measurement industry. *Id.* 89:14-16.

This is the second case in which Mr. Wilkinson has been retained as an expert witness. *Id.* 27:1-6. In the first case, *Alexsam v. IDT*, Mr. Wilkinson was retained as an expert witness in a patent case in the United States District Court for the Eastern District of Texas related to activating prepaid calling cards at a point of sale device. *Id.* 97:1-5, 106:1-4. At the time of his involvement in the *Alexsam* case, he was "a competitor to IDT" and he "provided the same type of technology with the same end result of end users activating cards at a point of sale device." *Id.* 105:12-18. In 2011, Mr. Wilkinson testified to the jury in the *Alexsam* case on technical issues. *Id.* 101:15-17,

3

102:20-22; *see also* D.I. 156-1, Ex. 8 193:5-7 (Excerpt of Wilkinson testimony in *Alexsam* case). His testimony was admitted without objection. D.I. 156-1, Ex. 8 193:8-10. Since the *Alexsam* case over 13 years ago, Mr. Wilkinson has not testified as an expert witness at trial. Wilkinson Dep. Tr. 119:15-22.

## II.  LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the U.S. Supreme Court held that Federal Rule of Evidence 702 creates "a gatekeeping role for the [trial] judge" in order to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. As the Third Circuit has explained:

> Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have . . . [held] that a broad range of knowledge, skills, and training qualify an expert. Secondly, the testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his o[r] her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity. Finally, Rule 702 requires that the expert testimony . . . must be relevant for the purposes of the case and must assist the trier of fact.

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (cleaned up); *Kuhar v. Petzl Co.*, No. 19-cv-3900, 2022 WL 1101580, at *7 (3d Cir. Apr. 13, 2022) (acknowledging the same trilogy).

Rule 702 "has a liberal policy of admissibility," *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (citation omitted); *see also United States v. Scripps*, 599 F. App'x 443, 447 (3d Cir. 2015) (same), as "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court," *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *see Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 83 (3d Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

## III. DISCUSSION

In its opening brief in support of its *Daubert* Motion, Nielsen gives five reasons for why the Court should exclude Mr. Wilkinson's expert opinion:

> 1. Mr. Wilkinson's testimony on damages contravenes standard assumptions and frameworks that are widely accepted by experts who assess reasonable damages in patent cases. The lack of reliability of Mr. Wilkinson's damages testimony demonstrates it will not be relevant and will not assist the jury. Instead, his damages testimony has a significant risk to unfairly prejudice Nielsen.
>
> 2. Mr. Wilkinson's testimony on no offers to sell and no sales impermissibly opines on the scope and meaning of Hypha's offers to sell and sales, which are tasks for the jury. His opinions on no offers to sale and no sales are just attorney arguments that can be made by Hypha's counsel in this case and not the proper subject for expert testimony. Mr. Wilkinson's testimony on no offers to sell and no sales is not the product of any principles and methods, much less reliable ones.
>
> 3. Mr. Wilkinson's testimony on practicing the prior art applies an incorrect legal standard—namely, the Federal Circuit has explained that "there is no practicing the prior art defense to infringement." His testimony on practicing the prior art is not the product of any principles and methods, much less reliable ones.
>
> 4. Mr. Wilkinson's education does not demonstrate specialized knowledge to testify on damages, no offers to sell and no sales, or practicing the prior art, and he has no credentials that demonstrate such specialized knowledge in any of those areas.

> 5. Mr. Wilkinson's testimony on technical issues is neither reliable nor relevant because Hypha has not and cannot demonstrate that he is a person of ordinary skill in the art ("POSA") for any of the Asserted Patents.

D.I. 156 at 2. The Court will address each argument in turn.

### 1. Mr. Wilkinson's Damages Report and Testimony Should Be Left to the Jury to Decide Its Weight

Nielsen contends that Mr. Wilkinson's report and testimony on damages are not reliable and do not have fit, and Nielsen claims he is not qualified to testify as an expert witness on damages. *Id.* at 7. Nielsen lays out four reasons why the Court should exclude Mr. Wilkinson's damages testimony for lacking reliability. "First, Mr. Wilkinson did not employ the standard assumption in assessing damages that liability will be found against the defendant." D.I. 156 at 8. "Second, Mr. Wilkinson did not employ the standard timeframe for assessing reasonable royalty damages, which is the time of the first alleged infringement." *Id.* at 9. "Third, Mr. Wilkinson's categorical rejection of the use of financial projections is contrary to Federal Circuit case law." *Id.* Fourth, "Mr. Wilkinson's proposed damages testimony is not reliable because he did not provide a quantitative measure of damages as an alternative to Mr. Arst's conclusions." *Id.* at 10.

However, none of these reasons are sufficient to exclude Mr. Wilkinson's testimony under the *Daubert* standard. Nielsen may disagree with some facts that Mr. Wilkinson omitted, but "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court," *Summit 6,* 802 F.3d at 1296. Additionally, Nielsen does not identify any cases where a court excluded an expert report for omitting any of these facts. Moreover, just because Mr. Wilkinson disagrees with Mr. Arst's report does not mean Mr. Wilkinson's opinion should be excluded. *See* Wilkinson Report ¶ 39 ("Mr. Arst's report is not reliable because it is based on projections and not actual profit and loss numbers."). Though Nielsen contends that the method in Mr. Arst's report comports with Federal Circuit law (D.I. 156 at 9 (quoting *Lucent*

6

*Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009))), Mr. Wilkinson is able to contest the facts that underly the method.

With regard to fit, Nielsen claims that Mr. Wilkinson's criticism of Mr. Arst "would be contrary to law" and "inflame the jury." D.I. 156 at 11. However, Mr. Wilkinson is merely criticizing the facts underlying Mr. Arst's method, not testifying contrary to law. Moreover, Nielsen asserts that Mr. Wilkinson's credentials do not make him qualified to testify as to damages. *Id.* Nielsen inaccurately cites to *Rothe Development, Inc. v. Department of Defense* because, in that case, the court excluded an expert who admitted he lacked any "training, education, knowledge, skill, and experience" in statistical or economic analysis. 107 F. Supp. 3d 183, 203 (D.D.C. 2015), *aff'd on other grounds sub nom. Rothe Dev., Inc. v. U.S. Dept. of Def.*, 836 F.3d 57 (D.C. Cir. 2016). In the instant case, Mr. Wilkinson has not admitted that he lacks any such experience and has put forth enough credentials to meet the qualification requirement. *See Schneider*, 320 F.3d at 404 (explaining that the qualification requirement of an expert should be interpreted liberally).

## 2. Mr. Wilkinson's Report and Testimony Do Not Improperly Opine on Legal Issues for No Offers to Sell and No Sales

Nielsen asserts that Mr. Wilkinson's reports and testimony on no offers to sell and no sales do not have fit and are not reliable and that Mr. Wilkinson is not qualified to testify as an expert witness on no offers to sell and no sales. D.I. 156 at 13. Nielsen claims that this testimony does not fit because "[a]n expert may not opine regarding 'the scope and meaning' of a contract" and would, therefore, not assist the jury. *Id.* at 14 (quoting *Allscripts Healthcare, LLC v. Andor Health, LLC*, No. 21-704-MAK, 2022 U.S. Dist. LEXIS 134924, at *129 (D. Del. July 29, 2022)). However, questions regarding offers to sell and sales involve questions of fact that an expert may opine on. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,

7

617 F.3d 1296, 1308-11 (Fed. Cir. 2010) (overturning the granting of summary judgment because there remained facts in dispute regarding "an offer to sell" and "a sale").

Nielsen is also incorrect in contending that Mr. Wilkinson's testimony is unreliable by alleging that he struggled in his deposition to explain how he reached his opinions on no offers to sell and no sales. D.I. 156 at 15-16. Mr. Wilkinson's testimony is reliable because he explains in his deposition that his conclusions of fact in his opinions on no offers to sell and no sales are "based on principles and methods of business operations and management of running a business in a developing and delivering a product, particularly a technology product, but any product." Wilkinson Dep. Tr. 142: 11-14. *See* Fed. R. Evid. 702 ("[A] witness qualified as an expert . . . may testify . . . if . . . the testimony is the product of reliable *principles* and methods." (emphasis added)).

Nielsen asserts that Mr. Wilkinson is "also not qualified to testify on no offers to sell and no sales." D.I. 156 at 16. Nielsen continues by arguing that his education, credentials, business experience, and prior experience testifying as an expert do not support him being qualified. *Id.* The Court disagrees. The combination of these factors supports the conclusion that Mr. Wilkinson is qualified to testify on no offers to sell and no sales, and Nielsen provides no cases that show the opposite.

### 3. Mr. Wilkinson's Practicing the Prior Art Report and Testimony Do Not Assert a Practicing the Prior Art Defense to Infringement

Nielsen claims that Mr. Wilkinson's proposed testimony on practicing the prior art does not have fit and is not reliable, and he is not qualified to testify as an expert witness on practicing the prior art. *Id.* at 17. First, Nielsen contends that Mr. Wilkinson's testimony lacks reliability and fit because it applies an incorrect legal standard due to the Federal Circuit holding that "there is no 'practicing the prior art' defense to literal infringement." *Id.* at 17 (quoting *Tate Access*

8

*Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1365 (Fed. Cir. 2002)). In particular, Nielsen submits that the Court should exclude ¶ 23 of the Wilkinson Report.

However, the Court is not persuaded that ¶ 23 improperly uses practicing the prior art as an infringement defense. Just because Mr. Wilkinson uses the term "practicing the prior art" does not mean it is in the context of asserting a legally invalid defense. *See Baxalta Inc. v. Bayer Healthcare LLC*, 513 F. Supp. 3d 426, 449 (D. Del. 2021) (quoting *01 Communique Laboratory, Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018)) ("The prohibition on defending infringement via 'practicing the prior art" does not 'preclude a litigant from arguing'" other defenses. (emphasis omitted)).

Nielsen likewise contends that Mr. Wilkinson's education and credentials do not "demonstrate that he has specialized knowledge to testify on the practicing the prior art." D.I. 156 at 18. Again, the Court disagrees with this conclusion, and Nielsen provides no support to its argument.

### 4. Mr. Wilkinson's Report and Testimony Do Not Opine on Issues that Require a POSA

Nielsen claims that the Court should exclude Mr. Wilkinson's testimony on technical issues because Hyphametrics has not and cannot demonstrate that Mr. Wilkinson is a POSA for any of the Asserted Patents. D.I. 156 at 19. While it is true that Mr. Wilkinson does not meet the definition of a POSA proffered by Nielsen's experts,[3] Nielsen has nonetheless failed to show that Mr. Wilkinson is improperly testifying on issues solely within the scope of a POSA.

---

[3] *See* Moulin Report ¶ 47 ("[A] person of ordinary skill in the art in the field of the '588 Patent would have a working knowledge of basic computer technology, image processing technology, and machine learning technology. The person would gain this knowledge through at least an undergraduate Bachelor of Science degree in Computer Science or Electrical Engineering or a comparable field, and at least three years of work experience in relevant fields."); Martin Report ¶ 53 ("[A] person of ordinary skill in the art in the field of the '901 Patent would have a working knowledge of basic computer technology, communicating multimedia content, and network

9

The Federal Circuit has held that for an expert to opine on certain issues, it must be from the perspective of a POSA. *See Sierra Wireless, ULC v. Sisvel S.p.A.*, 130 F.4th 1019, 1024 (Fed. Cir. 2025) ("[A]nticipation and obviousness [are] issues that must be examined from the perspective of a skilled artisan."); *Kyocera Senco Indus. Tools Inc. v. Intl. Trade Comm'n*, 22 F.4th 1369, 1376–77 (Fed. Cir. 2022) ("To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art.").

Hyphametrics does not offer its own definition of a POSA nor try to argue that Mr. Wilkinson meets Nielsen's proposed definition of a POSA. Instead, Hyphametrics merely states that just because "Mr. Wilkinson's expertise is different from that of Nielsen's experts" does not mean that he is "unfit to provide testimony on damages and financial matters directly relating to that technical expertise." D.I. 165 at 12 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). Hyphametrics asserts that Mr. Wilkinson is using his expertise to "inform jurors on the issues of (1) when is a product complete enough to be offered for sale and (2) what in the prior art pre-existed the patents-in-suit such that the 'invention' is marginal rather than a wholesale departure from the past." D.I. 165 at 12.

After reviewing the portions of Mr. Wilkinson's report that Nielsen highlights, the Court is not convinced that Mr. Wilkinson inappropriately opines on issues that must come from a POSA. For example, paragraphs 17-23 of the Wilkinson Report discuss the alleged flaws in Dr. Moulin and Dr. Martin's infringement analyses by highlighting the "cherry-picked testimony from HyphaMetrics's deposition witnesses, and [that they] avoided testimony where witnesses said that

---

communication. The person would gain this knowledge through at least an undergraduate Bachelor of Science degree in Computer Science or Electrical Engineering or a comparable field, and at least three years of work experience in the field of the '901 Patent.").

10

the neural network software was never able to work properly." *See* Wilkinson Report ¶ 18. Moreover, paragraphs 40-52 likewise criticize Dr. Martin and Dr. Moulin's infringement analyses by contrasting them with the deposition of Alfredo Castro Valdez, a Ph.D. software engineer employed by Hyphametrics. *See* Wilkinson Report ¶ 41. Finally, paragraphs 63-64 attempt to poke holes in the Almeroth Report by illustrating what the Almeroth Report lacks in comparison to what Hyphametrics' witnesses have testified. *See* Wilkinson Report ¶ 64 ("Mr. Almeroth's testimony lacks any actual testing and therefore is unreliable. HyphaMetrics's witnesses based their views on actual field experience, and through field experience they have actual knowledge of how problems are started and how they are obviated through technical workarounds. Without field experience and experimentation, Mr. Almeroth's opinions are not reliable.").

*Bausch & Lomb Inc. v. SBH Holdings LLC*, cited by Nielsen, is inapposite here. In *Bausch & Lomb*, the Court granted the plaintiff's *Daubert* motion to exclude Defendants' technical expert regarding infringement and prosecution history estoppel because the expert did not have the qualifications to be a POSA. Civil Action No. 20-1463-GBW-CJB, 2025 U.S. Dist. LEXIS 32308, at *3-4 (D. Del. Feb. 24, 2025). In the instant case, however, Mr. Wilkinson is not purporting to be a technical expert that requires a POSA's perspective, so Nielsen's analogy fails.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's *Daubert* Motion to Exclude the Expert Reports and Related Testimony of Philip Wilkinson (D.I. 155) is DENIED. Also, Defendant's Request for Oral Argument (D.I. 193) is DENIED-AS-MOOT.